# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAN HERNANDEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>M. WASHBURN, et al.,<br><br>        Defendants. | Case No. 1: 22-cv-00092-JLT-SAB<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A THIRD AMENDED COMPLAINT<br><br>(ECF No. 14)<br><br>THIRTY DAY DEADLINE |

       Adan Hernandez ("Plaintiff"), proceeding pro se and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. On March 23, 2022, the Court screened Plaintiff's complaint and granted Plaintiff thirty (30) days to file a first amended complaint. (ECF No. 7.) On April 11, 2022, the Court granted Plaintiff an extension of sixty (60) days to file an amended complaint. (ECF No. 11.) Currently before the Court is Plaintiff's second amended complaint, filed on May 26, 2022. (ECF No. 14.)

**I.**

**SCREENING REQUIREMENT**

       The Court is required to screen complaints brought by prisoners seeking relief against a

1

governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

In reviewing a *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)) ("where the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt."); United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that *pro se* filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.") (citations and internal quotations omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

///

///

## II.

## COMPLAINT ALLEGATIONS

Plaintiff filed this complaint while incarcerated, however the allegations described occurred while Plaintiff was being arrested. Plaintiff is not challenging his conditions of confinement, except as in relation to the injuries suffered while being arrested and as treated at a hospital immediately following arrest. The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff names the following Defendants in the second amended complaint: (1) Matt Washburn ("Washburn"), identified as a Deputy Sheriff for Kings County; and (2) Chris Barsteceanu ("Barsteceanu")[1], identified as a sergeant of SWAT for the Kings County Sheriff. (Sec. Am. Compl. ("SAC"), 1-2,[2] ECF No. 14.)

Plaintiff alleges that on June 14, 2021, he was involved in a high speed chase with the Kings County Sheriff's Department. (FAC ¶ 2.) The chase ended with Plaintiff's vehicle coming to rest perched on the side of the road in a ditch on Highway 43. (FAC ¶ 3.) Plaintiff then stayed in the vehicle for approximately two hours until chemical tear gas grenades were shot into Plaintiff's vehicle. (FAC ¶ 4.) Plaintiff exited the vehicle through the driver's side window, feet first due to the angle of the vehicle in the ditch. (FAC ¶ 5.) Plaintiff stood upright with "hand up and fully open." (Id.)[3] Plaintiff was attacked by a police dog that bit Plaintiff on the left arm below the elbow, causing unbearable pain and massive bleeding. (Id.) Immediately thereafter, Plaintiff was shot with a bean bag in the left hip, while Plaintiff was in pain from the dog bite. (FAC ¶ 6.) Plaintiff was then tackled to the ground by "numerous" deputies, at which point the dog moved to Plaintiff's left thigh biting Plaintiff and causing pain that Plaintiff had never experienced. (Id.) Plaintiff states the bite was now occurring while he was handcuffed and face

---

[1] Plaintiff spells the last name differently at certain points in the complaint, however, it appears the correct spelling is "Barsteceanu."

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3] It is unclear if Plaintiff meant to write the plural "hands" here, or if he only exhibited one hand while exiting the vehicle.

down on the ground, and then Plaintiff was "kicked in the left side of his head." (Id.) The dog was then called and told to release its teeth from Plaintiff's leg. (FAC ¶ 7.) Plaintiff was then stood up and "immediately transported" to the local hospital, due to massive bleeding. (Id.)

Based on a police report, a supplemental narrative, and a media narrative, which Plaintiff states he was only issued various pages of, Plaintiff was able to ascertain that the name of the dog handler was Defendant Washburn. (FAC ¶ 9.) Plaintiff also ascertained that the person in command at the time of the incident was Defendant Barsteceanu, a SWAT team leader sergeant with the Sheriff's Department. (FAC ¶ 10.)

Plaintiff's first cause of action is brought against Defendant Washburn pursuant to the Eighth Amendment to the United States Constitution. (FAC ¶¶ 11-19.) Based on the above incorporated facts, Plaintiff claims Defendant Washburn violated Plaintiff's right to be free from cruel and unusual punishment by Washburn's actions of intimidation, abuse, harassment, and other violations by excess force of the use of the K-9 under his direct control; that Washburn knew or should have known that the conduct created an unreasonable risk of serious harm or death by the unnecessary attack command to the Plaintiff; the actions demonstrate deliberate indifference to Plaintiff's Eighth Amendment rights; and were willful, intentional, malicious, wanton, and despicable, in conscious disregard of Plaintiff's rights.

Plaintiff's second cause of action against Defendant Barsteceanu, is also brought pursuant to the Eighth Amendment. (FAC ¶¶ 20-29.) Based on the facts described above (FAC ¶¶ 1-10), Plaintiff claims that Defendant Barsteceanu violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment by his failure to adequately supervise Washburn and all other subordinate deputies; that he knew or should have known that his conduct, attitudes and actions created an unreasonable risk of serious injury or death to Plaintiff; that the actions constituted deliberate indifference; that as a result, Plaintiff has suffered physical injuries from the dog bites and due to the kick to the left side of his head, causing problems with balance; and the actions were willful, intentional, malicious, wanton, and despicable in disregard of Plaintiff's rights.

///

**III.**

**DISCUSSION**

**A.     Federal Rule of Civil Procedure 8**

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any of the Defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

Plaintiff does not claim that a particular named Defendant kicked him while on the ground, nor that an unnamed officer kicked him, and thus the allegation is impermissibly vague and fails to give proper notice of the factual allegations against the named Defendants.

Plaintiff generally alleges that the K-9 bit him twice during the encounter, and was called off and told to release right before he was stood up in handcuffs. However, aside from standard legal allegations regarding a violation of the Eighth Amendment against Washburn (FAC ¶¶ 11-19), and averring he obtained knowledge that Washburn was the K-9 handler, Plaintiff does not specifically allege that Washburn took any actions or made any directions regarding the K-9, aside from an indication that the K-9 was told to release the bite, by someone. (FAC ¶¶ 7.)

Aside from naming Defendant Barsteceanu as the supervisor and making generalized standard legal allegations concerning a failure to supervise and for deliberate indifference, Plaintiff does not state any facts pertaining to any actual actions taken by Defendant Barsteceanu, and insufficient allegations for supervisory liability as explained in the following section.

These conclusory statements, insufficiently supported by factual details as to the named Defendants' specific actions, do not suffice to state any claim. For these reasons, Plaintiff's complaint fails to comply with Rule 8's pleading standard.

If Plaintiff chooses to file an amended complaint, he should consider the legal standards the Court provides in the following sections.

### B. Section 1983 and Supervisory Liability

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived her of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185 (9th Cir. 2006). There is no *respondeat superior* liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of his federal rights. Thus, to the extent Plaintiff is attempting to make a claim against an officer that was not personally involved in the excessive force, but was only acting as a supervisor over an officer, Plaintiff cannot state a claim unless they were personally and directly involved in the violation of his rights. "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' " Crowley v. Bannister, 734 F.3d 967, 977

1  (9th Cir. 2013) (citation and internal quotation marks omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id.; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

Plaintiff does not specify whether he is suing Defendant Barsteceanu in their official or individual capacities. To the extent Plaintiff is attempting to impose a claim for supervisory liability for a failure to train against Barsteceanu in an individual capacity, Plaintiff has not alleged any factual details showing they personally participated in the claimed excessive force. Plaintiff only alleges a failure to properly supervise. Plaintiff has not alleged any specific facts demonstrating Barsteceanu's "own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr v. Baca, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. See, .e.g., McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). To the extent Plaintiff is attempting to impose a claim for supervisory liability for a failure to train against Barsteceanu in an official capacity, such claim would also fail as currently presented in the second amended complaint.

"A local governmental entity is liable under § 1983 when action pursuant to official municipal policy of some nature cause[s] a constitutional tort." Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1473–74 (9th Cir.1992) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978)) (internal quotations omitted) (alteration in original). In order to state a Monell claim against a government official in his official capacity, a plaintiff must establish "that

the official (1) had final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue [;] and (2) was the policymaker for the local governing body for the purposes of the particular act." Cortez v. County of Los Angeles, 294 F.3d 1186, 1189 (9th Cir. 2002) (internal quotations and citations omitted).

"A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." Long v. Cty. of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." Id. "A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact; and (3) his constitutional injury would have been avoided had the municipality properly trained those officers." Young v. City of Visalia, 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009) (citations and quotation marks omitted) (alteration in original). A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Long, 442 F.3d at 1186 (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 398, 117 S. Ct. 1382, 1385, 137 L. Ed. 2d 626 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (citation omitted).

Plaintiff's vague, generalized claims regarding a failure to supervise fail to state a claim for supervisory liability under Section 1983.

**C.      The Eighth Amendment**

The Eighth Amendment proscribes a freedom from cruel and unusual punishment. U.S. Const. amend. VIII. "[W]henever prison officials stand accused of using excessive physical force

in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  In making this determination, the court may evaluate (1) the extent of any injury suffered by Plaintiff; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible prison officials; and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force causes should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

However, the prohibition of cruel and unusual punishment applies only after conviction and sentencing.  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  Thus, a claim of excessive force in the context of an arrest, as here, implicates the Fourth Amendment right to be free from "unreasonable . . . seizures," not the Eighth Amendment.  U.S. Const. amend. IV (emphasis added); see Graham, 490 U.S. at 394; see also Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) ("[b]ecause [the plaintiff] had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment."), overruled on other grounds by Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

Based on the aforementioned authorities, Plaintiff fails to state a claim under the Eighth Amendment for excessive force because the incident occurred not following his conviction and imprisonment, but rather during his arrest.  The Court shall now provide the standards under the Fourth Amendment for an excessive force claim related to arrest.

**D.      Fourth Amendment**

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff v. Rickard, 572 U.S.

765, 774 (2014); Graham v. Connor, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original); see also Price v. Sery, 513 F.3d 962, 967 (9th Cir. 2008).

Because reasonableness "is not capable of precise definition or mechanical application," the inquiry requires "attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. Graham, 490 U.S. at 396 (citing Johnson *v.* Glick, 481 F. 2d 1028, 1033 (2nd Cir. 1973)). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97; see also Ames v. King County, 846 F.3d 340, 348 (9th Cir. 2017). Determination of reasonableness therefore requires consideration of the totality of the circumstances. Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011).

The Ninth Circuit has articulated a three-step analysis to evaluate excessive force claims under the framework set forth by the Supreme Court in Graham v. Connor. See Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018) (citing Espinosa v. City & Cty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010)). First, the Court must assess "the severity of the intrusion" "by considering 'the type and amount of force inflicted.'" Id. Second, the Court must evaluate the government's interest "by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." Espinosa, 598 F.3d at 537 (quoting Graham, 490 U.S. at 396). Third, the Court must balance "the gravity of the intrusion on the individual against the government's need for that intrusion . . . to determine whether the force used was 'greater than is reasonable under the circumstances.'" Id. (citing Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002)).

10

Plaintiff's complaint is not expressly brought under the Fourth Amendment, but rather was brought under the Eighth Amendment. Even if Plaintiff presented sufficient factual information for a Fourth Amendment claim, dismnissal with leave to amend would be proper. See Denson v. Clark Cnty., No. 2:10-CV-00525-RCJ, 2010 WL 3076260, at *2 (D. Nev. Aug. 4, 2010) ("Plaintiff's other allegations do state claims upon which relief can be granted, but they require some amendment because plaintiff has used incorrect constitutional provisions. In count 1, plaintiff alleges that defendant Ducas's actions violated the Eighth Amendment. Plaintiff was not a prison inmate under a judgment of conviction at the time, and thus the Eighth Amendment is inapplicable. The Fourth Amendment is the correct constitutional provision regarding the force used to seize plaintiff."). Although the Court previously notified Plaintiff of this deficiency, the Court shall again grant Plaintiff leave to amend to correct this deficiency.

Finally, even if Plaintiff had brought a Fourth Amendment claim for excessive force, for the reasons described above, there are insufficient factual details to state a claim under these applicable legal standards, and taking the facts that are proffered as true, are insufficient to state a claim for a violation of the Fourth Amendment. More specifically, there are insufficient facts alleged that would allow the Court, or the answering Defendants, to address the three-step analysis employed in the Ninth Circuit. If Plaintiff chooses to file an amended complaint, he should consider these standards and provide the Court with sufficient factual details pertaining to the named Defendants.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff fails to state a cognizable claim and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order faith. Lopez, 203 F.3d at 1127. Plaintiff's third amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678–79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927. Absent court approval, Plaintiff's third amended complaint must be "complete in itself without reference to the prior or superseded pleading." E.D. Cal. L.R. 220.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a third amended complaint curing the deficiencies identified by the Court in this order;
3. The third amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and
4. If Plaintiff fails to file a third amended complaint in compliance with this order, the Court will recommend to a District Judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:   **May 27, 2022**

UNITED STATES MAGISTRATE JUDGE

12